**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

THEODORE JOHN GRIM III,

           Plaintiff,

vs.

CENTRUM VALLEY FARMS, L.L.P.,

      Defendant.

No. C 15-3167-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION FOR
PARTIAL DISMISSAL**

_____

**TABLE OF CONTENTS**

I.    **INTRODUCTION**................................................................2
    *A.*   *Factual Background* ................................................2
    *B.*   *Procedural Background* ..........................................4
II.   **LEGAL ANALYSIS** ..................................................5
    *A.*   *Applicable Standards*.............................................5
        *1.*   *Standards for dismissal for failure to state a claim*...................5
        *2.*   *"Wrongful" and "constructive" discharge under Iowa law* .......................................8
    *B.*   *Grim's Claim Of "Constructive Discharge—Workers' Compensation Retaliation"* ............................. 12
        *1.*   *Arguments of the parties*............................ 12
        *2.*   *Analysis* ................................................. 13
    *C.*   *Grim's Claim Of "Constructive Discharge—Failure To Pay Overtime Wages"* ............................ 18
        *1.*   *Arguments of the parties*............................ 18
        *2.*   *Analysis* ................................................. 19
III.  **CONCLUSION**................................................... 22

Has the plaintiff, a laborer employed by an egg producer, stated viable claims for constructive discharge?  The plaintiff claims that he was constructively discharged in violation of Iowa public policy, in retaliation for his claim for workers compensation benefits, by his employer's failure to accommodate his work restrictions.  He also claims that he was constructively discharged by his employer's failure to pay overtime wages as required by the federal Fair Labor Standards Act (FLSA).  The defendant employer seeks dismissal of these claims for failure to state claims upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.  INTRODUCTION
### A.  *Factual Background*

Because this case is before me on a Rule 12(b)(6) motion to dismiss, the pertinent factual background is necessarily drawn from the Petition At Law originally filed by plaintiff Theodore John Grim III in the Iowa District Court for Wright County and removed to this court by defendant Centrum Valley Farms, L.L.P.  *See, e.g., Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)).  The Statement Of Facts in Grim's Petition, upon which all of his claims are based, is set out in the following twelve short paragraphs:

> 5.      Plaintiff was employed by Defendant as a general laborer for a period of approximately two years.

> 6.      Plaintiff's regular job consisted of boxing eggs by putting eggs into flats in a box.  He then stacked them on pallets and wrapped them up, took them with a pallet jack and loaded them into a freezer so they would be ready for loading onto trucks.

7.      Plaintiff was injured in the course of his employment in May 2014.

8.      As a result of the work-related left hand injury of May 2014, Plaintiff was provided restrictions that included no repeated grasping, and recommended icing every 15 minutes.

9.      After Plaintiff sustained a work related injury, he was provided an "accommodated" kindling job which required picking out bad eggs. This position was extremely painful because of the repeated grasping and gripping.

10.     Aside from the pain from the kindling job, the braces Plaintiff was wearing made it difficult to grasp eggs and resulted in eggs being broken.

11.     Plaintiff was threatened with termination for breaking eggs.

12.     When Plaintiff complained of pain from his work-related injury, he was allowed to do a painting job. This job still involved repetitive arm use and cause[d] increased pain.

13.     Continual failure to follow the work restrictions provided led Plaintiff to complain of pain from painting. Plaintiff was then sent home as "sick" for three days and was not paid wages or workers' compensation.

14.     After Plaintiff returned from his three "sick days," he was told that if he missed any more work he would be fired.

15.     During the course of his employment with Defendant, Plaintiff worked on average 12 hours per day, a minimum of five days per week and was paid his regular wages without overtime for all work performed.

16.     Plaintiff's work-related injury and Defendant's failure to pay overtime led to the termination of his employment with Defendant.

Petition (docket no. 4), ¶¶ 5-16.

Grim "reasserts" these twelve paragraphs in each of his claims. *Id*. at ¶¶ 17, 22, 28, and 36. In addition, in support of his claim of "Constructive Discharge—Workers' Compensation Retaliation," Grim alleges, in pertinent part, that "Defendant's intentional failure to accommodate Plaintiff's work restrictions was done in retaliation for filing for workers' compensation"; that "he was further retaliated against by being taken off of work with no pay"; that, "[b]ased on Defendant's failure to accommodate, Plaintiff's working conditions became intolerable and he was forced to involuntarily resign from his employment with Defendant"; and that, "[u]ltimately, [he] quit his employment because of the pain in his arms and the fact Defendant continually failed to accommodate his work restrictions." *Id*. at ¶¶ 30, 32, 33, and 34. In support of his claims of "Constructive Discharge—Failure To Pay Overtime Wages," Grim also alleges, in pertinent part, that, "[b]ased on the withholding of overtime wages, Plaintiff's working conditions became intolerable and he was forced to involuntarily resign from his employment with Defendant" and that "the continuous pattern of wage withholding for approximately two years made the work performed for Defendant intolerable." *Id*. at ¶¶ 39-40.

### B.    *Procedural Background*

Grim filed his Petition initiating this action in the Iowa District Court for Wright County on October 5, 2015. In his Petition, Grim asserts the following four claims: In Count I, a claim of "Wrongful Withholding Of Wages" in violation of the Iowa Wage Payment Collection Laws, IOWA CODE § 91A.3; in Count II, a claim of "Failure To Pay Overtime Wages," in violation of the FLSA; in Count III, a claim of "Constructive Discharge—Workers' Compensation Retaliation"; and in Count IV, a claim of "Constructive Discharge—Failure To Pay Overtime Wages."

On November 19, 2015, defendant Centrum Valley Farms filed its Notice of Removal (docket no. 2), removing this action to this federal court. Grim's Petition was

then refiled in this court as docket no. 4. On November 25, 2015, in lieu of answering Grim's Petition, Centrum Valley Farms filed the Pre-Answer Motion For Partial Dismissal (docket no. 7) now before me. In its Motion, Centrum Valley Farms challenges only the "constructive discharge" claims in Counts III and IV of Grim's Petition. Grim filed his Resistance To Defendant's Motion To Dismiss (docket no. 9), resisting dismissal of either of the challenged claims, on December 14, 2015. Centrum Valley Farms then filed a Reply (docket no. 10), in further support of its Motion, on December 22, 2015.

Centrum Valley Farms requested oral arguments on its Motion. I do not find that oral arguments are likely to be of benefit in this case, however, in light of the parties' briefing and the applicable legal standards. Therefore, I will consider Centrum Valley Farms's Motion on the parties' written submissions.

## II.     LEGAL ANALYSIS

### A.     Applicable Standards

#### 1.     Standards for dismissal for failure to state a claim

Centrum Valley Farms's Motion is pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). As the Eighth Circuit Court of Appeals has explained,

> We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted). "A claim has facial plausibility

> when the plaintiff pleads factual content that allows the court
> to draw the reasonable inference that the defendant is liable
> for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*, 686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Courts consider "plausibility" under this *Twom-bal* standard[1] by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.* at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the
> non-moving party and grant all reasonable inferences from the
> pleadings in favor of the non-moving party," *United States v.*

---

[1] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

> *Any & All Radio Station Transmission Equip.*, 207 F.3d 458,
> 462 (8th Cir. 2000), "[a] pleading that offers 'labels and
> conclusions' or 'a formulaic recitation of the elements of a
> cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129
> S.Ct. 1937 (quoting *[Bell Atl. Corp. v.] Twombly*, 550 U.S.
> [544,] 555, 127 S.Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d at 1128 (stating the same standards).[2]

Various federal Circuit Courts of Appeals have expressly recognized that, in addition to dismissal for factual implausibility, the *Twom-bal* standard still permits dismissal pursuant to Rule 12(b)(6) of a claim that lacks a cognizable legal theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013) (a claim may be dismissed if it is based on an "indisputably meritless legal theory"); *Commonwealth Property Advocates, L.L.C. v. Mortgage Electronic Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief."); *see also Philadelphia Indem. Ins. Co.*

---

[2] In assessing "plausibility," as required under the *Twom-bal* standard, the Eighth Circuit Court of Appeals has explained that courts "consider[ ] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), and citing *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)). A more complete list of the matters outside of the pleadings that the court may consider, without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Miller*, 688 F.3d at 931 n.3 (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)). The parties have not offered any material outside of the pleadings in support of or resistance to the present Motion For Partial Dismissal, however.

*v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (recognizing that a claim must plead sufficient facts under a "viable legal theory"). The Eighth Circuit Court of Appeals has suggested the same. *See Brown v. Mortgage Electronic Registration Sys., Inc.*, 738 F.3d 926, 933 n.7, 934 (8th Cir. 2013) (noting the appellate court's agreement "with the district court's sound reasoning that the facts pled do not state a cognizable claim under Arkansas law" and holding that dismissal pursuant to Rule 12(b)(6) was appropriate, because Arkansas law did not impose the purported duty on which an unjust enrichment claim and a state statutory claim were based).

I will apply these standards to Centrum Valley Farms's Motion For Partial Dismissal.

### 2. *"Wrongful" and "constructive" discharge under Iowa law*

At least as argued by the parties, both of the challenged claims implicate the standards for "wrongful discharge in violation of public policy," and, more specifically still, "constructive discharge," under Iowa law. Therefore, I will also briefly summarize those standards.

Under Iowa law, "wrongful discharge" is an exception to the general rule that employment is at-will. *See Jones v. University of Iowa*, 836 N.W.2d 127, 144 (Iowa 2013). "The narrow public-policy exception to the at-will employment doctrine 'limits an employer's discretion to discharge an at-will employee when the discharge would undermine a clearly defined and well-recognized public policy of the state.'" *Id.* (quoting *Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 109 (Iowa 2011). The seminal case recognizing such a tort under Iowa law held "that discharging an employee merely for pursuing the statutory right to compensation for work-related injuries offends against a clearly articulated public policy of this state." *Springer v. Weeks and Leo Co., Inc.*, 429 N.W.2d 558, 559 (Iowa 1988). Although the court in *Springer* did not describe the claim as "retaliation" for filing a workers compensation claim, that was clearly the gist of the claim, and the court subsequently identified the claim as one of "retaliation." *Dorshkind*

*v. Oak Park Place of Dubuque II, L.L.C.*, 835 N.W.2d 293, 300 (Iowa 2013) ("We have consistently held that an employee cannot be discharged in retaliation for enforcing a statutory right. The first case to do so was *Springer*, 429 N.W.2d 558.").

In *Jones*, the court stated the elements of a "wrongful discharge" claim as follows:

> (1) the existence of a clearly defined and well-recognized public policy that protects the employee's activity; (2) this public policy would be undermined by the employee's discharge from employment; (3) the employee engaged in the protected activity, and this conduct was the reason the employer discharged the employee; and (4) the employer had no overriding business justification for the discharge.

*Jones*, 836 N.W.2d at 144 (quoting *Dorshkind*, 835 N.W.2d at 300, in turn quoting *Berry*, 803 N.W.2d at 109–10). Subsequently, in *Rivera v. Woodward Resource Center*, 865 N.W.2d 887 (Iowa 2015), the Iowa Supreme Court reiterated that it had long held that "an at-will employee c[annot] be terminated for reasons contrary to public policy." 865 N.W.2d at 893 (citing *Springer*, 429 N.W.2d at 560-61). Although the court in *Rivera* acknowledged that public policy determined whether or not the employee's conduct was protected, what the court called "the public policy element of a wrongful discharge claim" was not contested on appeal in that case. *Id*. at 894; *compare Jones*, 836 N.W.2d at 144 (expressly including the "public policy" element or elements separate from the "protected activity" element). Thus, in *Rivera*, the court explained that to prove a claim of "wrongful discharge in violation of public policy," "the 'plaintiff must establish (1) engagement in a protected activity, (2) adverse employment action, and (3) a causal connection between the two.'" *Id*. (quoting *Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 299 (Iowa 1998)).

Just as importantly, here—and perhaps more importantly, generally—in *Rivera*, the court expressly held that "the lack of a legitimate business justification is not an element of the claim that the plaintiff must prove," but neither is it irrelevant, so that "there may be some relatively rare circumstances when an employer is entitled to an

affirmative defense of an overriding business justification." *Id*. at 898-99; *compare Jones*, 836 N.W.2d at 144 (including lack of business justification as an element of the claim). In *Rivera*, the court also clarified the "causation" requirement of such a claim, explaining that, "in order to prevail on a wrongful discharge claim in violation of public policy, the plaintiff must show the protected conduct was the determining factor in the adverse employment action." *Id*. at 898 (Iowa 2015). The court added,

> Further, we recognize our caselaw has consistently stated a determining factor is one that tips the balance in an employment decision. *See Teachout*, 584 N.W.2d at 302 n. 2; *Smith [v. Smithway Motor Xpress, Inc.]*, 464 N.W.2d [682,] 686 [(Iowa 1990)]. In order to be the determining factor, it is not necessary the protected conduct be "the main reason behind the decision," but it must be the factor that makes the difference in the employment outcome. *Smith*, 464 N.W.2d at 686; *see Davis [v. Horton]*, 661 N.W.2d [533,] 536 [(Iowa 2003)] (analogizing determining factor to the "final straw in [the employer's] decision to terminate [the plaintiff's] employment").

*Rivera*, 865 N.W.2d at 898.

Thus, the elements of a claim of wrongful discharge in violation of public policy under Iowa law, as modified or clarified by the court in *Rivera*, are as follows: (1) the existence of a clearly defined and well-recognized public policy that protects the employee's activity; (2) this public policy would be undermined by the employee's discharge from employment; (3) the employee engaged in the protected activity; and (4) the employee's protected activity was the determining factor for the employer's discharge of the employee. 865 N.W.2d at 894-98; *Jones*, 836 N.W.2d at 144.

Turning to "constructive discharge," the Iowa Supreme Court has held "that a constructive discharge is actionable only when an express discharge would be actionable in the same circumstances," such as with "an accompanying claim that the discharge was the result of illegal conduct such as the violation of public policy." *See Balmer v.*

10

*Hawkeye Steel*, 604 N.W.2d 639, 643 (Iowa 2000). As the Iowa Supreme Court has explained,

> "Constructive discharge exists when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *First Judicial Dist. Dep't of Correctional Servs. v. Iowa Civil Rights Comm'n*, 315 N.W.2d 83, 87 (Iowa 1982). Generally, trivial or isolated acts of the employer are not sufficient to support a constructive discharge claim. *Haberer v. Woodbury County*, 560 N.W.2d 571, 576 (Iowa 1997). Rather, the "working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." *Id*. (citation omitted). In addition, conditions will not be considered intolerable unless the employer has been given a reasonable chance to resolve the problem. *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1159 (8th Cir.1999); *see First Judicial Dist. Dep't of Correctional Servs.*, 315 N.W.2d at 89. On the other hand, an employee need not stay if he or she reasonably believes there is no possibility the employer will respond fairly. *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 574 (8th Cir.1997). In determining whether a constructive discharge has occurred, the fact finder uses an objective standard. *Haberer*, 560 N.W.2d at 575.

*Van Meter Indus. v. Mason City Human Rights Comm'n*, 675 N.W.2d 503, 511 (Iowa 2004).

With these standards in mind, I turn to consideration of Centrum Valley Farms's challenges to Grim's two "constructive discharge" claims.

### B.      Grim's Claim Of "Constructive Discharge—Workers' Compensation Retaliation"

#### 1.      Arguments of the parties

Centrum Valley Farms makes a two-pronged attack on Grim's claim of "Constructive Discharge—Workers' Compensation Retaliation" in Count III. First, Centrum Valley Farms argues that Grim's claim for constructive discharge is on the sole basis that Centrum Valley Farms did not accommodate Grim's work restrictions, but such a claim seeks to expand the narrow exception to at-will employment provided by a wrongful discharge claim far beyond the limits circumscribed by the Iowa Supreme Court. Specifically, Centrum Valley Farms argues that this claim fails, because Grim cannot point to any clearly defined or well-recognized public policy that would be undermined by a discharge resulting from its alleged failure to accommodate Grim's work injury, where the Iowa Workers compensation Act does not mandate that employers provide accommodations to employees injured on the job. Second, Centrum Valley Farms argues that Grim's claim amounts to a "failure to accommodate disability" claim, but such a claim is preempted by the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216, and Grim has not exhausted that claim in administrative proceedings, as required under the ICRA.

Grim responds that his claim is not a claim for "failure to accommodate" a disability, but a claim of retaliation for seeking workers compensation benefits. He argues that Iowa public policy clearly recognizes that an employer cannot discharge (or constructively discharge) an employee for filing a workers compensation claim. He contends that he has pleaded that Centrum Valley Farms retaliated against him for filing his workers compensation claim by setting him up for failure with "accommodations" that did not fit his restrictions from his work-related injury. Specifically, he argues, the "kindling" job did not fit his "grasping" limitation, and his brace caused eggs to be broken, setting him up for a threat of and possible termination for breaking eggs.

12

Similarly, he argues, the "painting" job also aggravated his work-injury pain, but instead of getting workers compensation benefits, he was given unpaid "sick time," setting him up for a threat of and possible termination if he missed more work. Grim argues that, because he is not asserting a "failure to accommodate" claim, he was not required to exhaust any administrative remedies under the ICRA.

In reply, Centrum Valley Farms reiterates its contention that attempted, but insufficient, accommodations cannot, as a matter of law, constitute retaliation. Centrum Valley Farms argues that allegedly retaliatory action is only sufficiently "adverse" to sustain a wrongful discharge claim if it might well have dissuaded a reasonable worker from making or supporting a claim for workers compensation benefits. Thus, where a request for accommodation does not necessarily have to be honored, the prospect that it will not (or cannot) be honored cannot deter a reasonable employee from requesting accommodation, or no reasonable employee would ever make the request.

### 2.    *Analysis*

First, I conclude that Centrum Valley Farms's *second* attack on the "constructive discharge" claim in Count III, which is that the claim amounts to an "unexhausted" "failure to accommodate disability" claim under the ICRA, is a red herring. There is simply no allegation that Grim is "disabled," let alone that Grim suffers from a "disability" within the meaning of the ICRA, and no allegation that any impairment from Grim's hand injury was sufficiently permanent, long-term, intermittent, or episodic to plausibly suggest a "disability" under the ICRA. *See Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 11-12 (Iowa 2014) (distinguishing "disability" under the ADA, which requires permanent or long-term limitations, from "disability" under the ICRA, which "contemplate[s] some disabilities might be permanent but, unlike federal law, has never contemplated that a disability could not be intermittent or episodic," but

not suggesting the "disability" could be merely temporary).[3]  Thus, what lacks any plausible factual basis in the pleadings is Centrum Valley Farms's assertion that the claim in Count III "amounts to" a "failure to accommodate disability" claim within the meaning of the ICRA.  *See, e.g., Whitney*, 700 F.3d at 1128 (explaining that, on a Rule 12(b)(6) motion to dismiss, the question is whether the pleader has alleged facts that plausibly support a claim).

Second, I believe that Centrum Valley Farms has misconstrued the claim in Count III as a claim of failure to accommodate restrictions from Grim's work-related injury, that is, as a claim seeking to impose on employers a duty to accommodate employees injured on the job.  A symptom of this misconstruction is Centrum Valley Farms's contention that there is no clearly-established public policy of the state of Iowa that requires an employer to accommodate an employee's restrictions from a work-related injury.  Rather, *as pleaded*, Grim has asserted a claim of *retaliation for filing a workers compensation claim*, *see* Petition at ¶¶ 30, 32, where filing a workers compensation claim is undeniably protected by a clearly-defined and well-recognized public policy of the state, and where retaliation for such activity would clearly undermine that public policy. *Rivera*, 865 N.W.2d at 893; *Dorshkind*, 835 N.W.2d at 300; *Springer*, 429 N.W.2d at 559, 560-61.

Here, seeking accommodation of restrictions from a work-related injury is not *the protected activity* alleged; rather, providing insufficient accommodation, and, indeed, doing so with the intent of forcing Grim to quit or justifying his termination, is *the retaliatory conduct* alleged.  *See* Petition at ¶¶ 30, 32-35.  As Grim argues, there is a

---

[3] There is not even an allegation that Grim's hand injury had reached maximum medical improvement, which marks the transition from temporary benefits to permanent partial or permanent total benefits awards based on work-related disability under the Iowa Workers Compensation Act.  *See, e.g., Bell Bros. Heating and Air Conditioning v. Gwinn*, 779 N.W.2d 193, 200-201 (Iowa 2010).

plausible inference that the insufficient accommodations were designed to set him up for failure. Specifically, he has alleged that he was given two "accommodations" that did not fit his work restrictions, threatened with termination for breaking eggs when he could not perform the "kindling" job, and sent home as "sick" (instead of with workers compensation benefits) and threatened with termination for missing work when he could not perform the "painting" job. *See id.* at ¶¶ 9-11, 12-14, 32; *Whitney*, 700 F.3d at 1128 (explaining that, on a Rule 12(b)(6) motion to dismiss, the question is whether the pleader has alleged facts that plausibly support a claim). It is, in part, the fact that the allegedly retaliatory conduct was failure to accommodate work restrictions from a work-related injury that provides a plausible factual basis for the inference that the determining factor for the retaliatory conduct was the filing of Grim's workers compensation claim. *See Rivera*, 865 N.W.2d at 898 (clarifying this "causation" requirement).

Furthermore, a plausible factual basis for the inference that the insufficient "accommodations" were deliberately chosen to make Grim's working conditions so intolerable that Grim would quit comes from the allegations that the "accommodation" jobs were beyond Grim's restrictions from his work-related injury. *See Van Meter Indus.*, 675 N.W.2d at 511 (defining "constructive discharge"). This inference is strengthened by further allegations that Grim's employer threatened him with termination for his inability to perform the "accommodation" jobs or for any further absences, as well as from the allegation that he was required to take unpaid "sick" days, rather than receive workers compensation benefits, when he could not continue the "painting" job because of pain from a work-related injury. *Whitney*, 700 F.3d at 1128 (explaining that, on a Rule 12(b)(6) motion to dismiss, the question is whether the pleader has alleged facts that plausibly support a claim).

This leaves Centrum Valley Farms's argument that providing allegedly insufficient accommodation, when an employer has no duty to provide *any* accommodation to an injured worker, cannot, as a matter of law, be the basis for a retaliation claim. Centrum

Valley Farms recognizes that there are no Iowa decisions or decisions applying Iowa law so holding. It points out, however, that the Kansas Court of Appeals has held, as follows:

> [W]e would construe the ruling in *Rowland [v. Val-Agri, Inc.*, 766 P.2d 819 (1988),] to state that the public policy creating the tort of retaliatory discharge does not *require* employers to consider or find alternative employment for an injured employee who is unable to return to his or her former position. While the [Kansas] Workers Compensation Act is designed to encourage employers to make such accommodations, an employer cannot be sued for retaliatory discharge simply because it failed to consider another position or to modify a job to accommodate an injured employee.

*Griffin v. Dodge City Co-op Exchange*, 927 P.2d 958, 965 (Kan. Ct. App. 1996) (emphasis in the original). Centrum Valley Farms's argument is not persuasive in this case.

First, Centrum Valley Farms is attempting to pound the square peg of the circumstances alleged here into the round hole of the holding in *Griffin*. Grim has not alleged that the retaliatory conduct was failure to consider another position or to modify a job to accommodate his injury. *Compare id.* Nor has Grim alleged that Iowa law prohibits an employer from firing an employee with a work-related injury unless the employee is incapable of performing the duties of *any jobs* available to him based upon his physical restrictions, as the plaintiff in *Griffin* argued Kansas law required. *See id.* at 963. Rather, he has alleged—and, I find, he has alleged sufficient facts to plausibly suggest—that Centrum Valley Farms provided insufficient accommodations in retaliation for his filing of a workers compensation claim with the intent to set him up for failure to justify firing him and/or to make his position so intolerable that he would be forced to quit.

Second, there are incentives for an employer to accommodate—or merely appear to accommodate—an injured worker, which should permit a claim for workers

compensation retaliation to proceed, where an employer allegedly deliberately provided insufficient accommodations to an injured worker. The Kansas court observed,

> [A]n employer who accommodates an injured employee, especially if the accommodated position pays comparable wages, can benefit under the [Kansas] Workers Compensation Act. This benefit arises not only by retaining an experienced employee, *but also by the potential that the employer's liability for workers compensation benefits can be reduced.* For example, an employee placed in an accommodated position with a comparable wage must overcome the statutory presumption that he or she has no work disability under K.S.A. 44-510e(a) and would generally be limited to benefits based upon his or her *functional* disability. *See, e.g., Lee v. Boeing Co.-Wichita*, 21 Kan.App.2d 365, 899 P.2d 516 (1995); *Foulk v. Colonial Terrace*, 20 Kan.App.2d 277, 284, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995); *Elliff v. Derr Constr. Co.*, 19 Kan.App.2d 509, 875 P.2d 983 (1993).

*Griffin*, 927 P.2d at 964-65 (first emphasis added; second emphasis in the original). Similarly, under the Iowa Workers Compensation Act, "[h]ealing period benefits are not payable when an employee returns to work." *Staff Mgmt. v. Jimenez*, 839 N.W.2d 640, 658 (Iowa 2013) (citing IOWA CODE § 85.34(1)). Rather, the employer is required to pay only temporary partial benefits "when the employee is temporarily, partially disabled and accepts *suitable work consistent with [his] disability*," *Mannes v. Fleetguard, Inc.*, 770 N.W.2d 826, 830 (Iowa 2009) (emphasis added) (citing IOWA CODE § 85.33(3)), and then only "if the employee experiences an actual reduction in wages." *Id.* (citing IOWA CODE § 85.33(2) and (4)); *see also McQuiston v. City of Clinton*, 872 N.W.2d 817, 831-32 (Iowa 2015) (concluding that a city policy of limiting light-duty accommodations to employees injured on the job was reasonably based on "getting employees back to work after an on-the-job injury, minimizing financial hardship, retaining workers, minimizing workers' compensation costs, and making the receipt of

workers' compensation benefits contingent on performing those duties of their jobs consistent with medical restriction," and concluding that "[l]imiting light duty to those harmed through a work injury and thereby minimizing workers' compensation costs is a realistically conceivable reason for the classification in the policy"). An employer who attempts to "game the system" by deliberately providing an insufficient accommodation to an employee with a work-related injury—to obtain the benefits of a reduction in workers compensation costs even though the accommodation is not consistent with the employee's disability, *see Mannes*, 770 N.W.2d at 830, to retaliate against the employee for filing a claim for workers compensation benefits, and/or to make the employee's position so intolerable that the employee quits—plainly violates the Iowa public policy underlying the workers compensation program. *Rivera*, 865 N.W.2d at 893; *Dorshkind*, 835 N.W.2d at 300; *Springer*, 429 N.W.2d at 560-61.

For these reasons, the part of Centrum Valley Farms's Motion seeking dismissal of Grim's claim of "Constructive Discharge—Workers' Compensation Retaliation" in Count III is denied.

### C.     *Grim's Claim Of "Constructive Discharge—Failure To Pay Overtime Wages"*

#### 1.     *Arguments of the parties*

Centrum Valley Farms's challenge to Grim's second "constructive discharge" claim is more direct. Centrum Valley Farms contends that Grim is asserting that a violation of the FLSA, standing alone, is sufficient to support a claim for retaliatory constructive discharge under the FLSA, but the Eighth Circuit Court of Appeals has considered and rejected a nearly identical assertion under the closely-related Equal Pay Act, citing *Hutchins v. International Brotherhood of Teamsters*, 177 F.3d 1076, 1082 (8th Cir. 1999). Centrum Valley Farms points out that Grim has not alleged any specific

retaliatory act *other than* the violation of the statute as the conduct that allegedly forced him to quit.

Grim contends that dismissal of this claim is also inappropriate, because neither the FLSA nor the Iowa Wage Payment Collection Act specifically addresses constructive discharge based on failure to pay overtime wages, even though failure to do so violates the overtime wage provisions of those acts. He argues that the wrongful constructive discharge in this matter is not based on the FLSA, in and of itself, but on the "repercussions" that followed Centrum Valley Farms's failure to comply with the *clear* public policy rights defined in the FLSA and under Iowa Code § 91A. He argues that he has adequately alleged that the continuous pattern of wage withholding for approximately two years made working for Centrum Valley Farms intolerable.

In reply, Centrum Valley Farms argues that Grim's resistance is based on a claim for discharge in violation of public policy that he never pleaded. Centrum Valley Farms argues that this repackaged claim should be dismissed, because applicable wage statutes preempt Grim's state law tort claim for wrongful discharge in violation of public policy and because Grim does not plead any facts supporting his claim that his discharge was the result of engaging in any protected activity. Centrum Valley Farms argues that, while Grim alleges that he complained about not being paid overtime, that complaint did not change any circumstances of his employment, not even his pay. Thus, Centrum Valley Farms argues, Grim's allegedly protected activity had no effect at all on the terms and conditions of his employment, so it could not have been a determining factor in his constructive discharge.

### 2. *Analysis*

Centrum Valley Farms's challenge to this "constructive discharge" claim stands on much firmer ground. First, Centrum Valley Farms is correct that *Hutchins* appears to bar such a claim:

Hutchins claims that she was forced to quit her job as a result of the IBT's refusal to rectify the pay disparity. *To establish a claim of constructive discharge under Title VII, a plaintiff must show more than just a violation of the statute. Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir.1998). Rather, "[a] constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee to quit." *Johnson v. Runyon*, 137 F.3d 1081, 1083 (8th Cir.) (internal quotations omitted), *cert. denied*, 525 U.S. 916, 119 S.Ct. 264, 142 L.Ed.2d 217 (1998). Under the Equal Pay Act an employee may recover for an actual or constructive discharge only when it is in retaliation for the employee's filing of a complaint or participating in other proceedings under the Act. 29 U.S.C. § 215(a)(3).

*Hutchins*, 177 F.3d at 1082 (emphasis added). Here, like the plaintiff in *Hutchins*, Grim alleges that, despite his complaints about not being paid overtime wages, Centrum Valley Farms did nothing to rectify the alleged violation of the FLSA. *See* Petition at ¶¶ 39-42. I agree with Centrum Valley Farms that, even where an employee complains about an alleged violation of a federal wage or employment law, and the employer does not rectify that alleged violation, the mere violation itself cannot be the basis for a retaliatory constructive discharge claim.

Grim's attempt to repackage his claim to avoid this outcome is unavailing. Notably, there is no reference to the Iowa Wage Payment Collection Act, Iowa Code § 91A, or public policy anywhere in Count IV of Grim's Petition. Furthermore, while Rule 15 of the Federal Rules of Civil Procedure now provides a plaintiff with the opportunity to amend a complaint "as a matter of course," *i.e.*, without requiring leave of court, within 21 days after service of a motion under Rule 12(b), *see* Fed. R. Civ. P. 15(a)(1)(B), Grim made no attempt to amend his Petition to assert his "repackaged" claim within the 21-day window, nor did he request leave to amend, in the alternative to dismissal, in his resistance to Centrum Valley Farms's Motion.

Even if he had attempted to amend his Petition to assert the claim that he now contends that he is asserting, doing so would have been futile. "The FLSA makes it unlawful 'to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter.'" *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (quoting 29 U.S.C. § 215(a)(3)). The Eighth Circuit Court of Appeals has described this provision as the FLSA's "antiretaliation provision," authorizing a retaliation claim. *See Montgomery v. Havner*, 700 F.3d 1146, 1148-49 (8th Cir. 2012). Grim has not shown that a common-law "wrongful discharge" claim would not be entirely duplicative of a claim of an FLSA violation for failure to pay overtime wages, where he has not alleged any "retaliatory" conduct other than failure to pay overtime wages. Similarly, he has not shown that a common-law retaliation claim is necessary to vindicate any FLSA rights for which the FLSA, itself, provides no adequate remedy.

Furthermore, a constructive discharge is not actionable, standing alone, but must be accompanied by a claim that the discharge was the result of some other illegal conduct. *Balmer*, 604 N.W.2d at 643. Thus, Grim must allege, *inter alia*, that he engaged in protected activity, and that his protected activity was the determining factor for his employer's constructive discharge of him. *Rivera*, 865 N.W.2d at 894-98; *Jones*, 836 N.W.2d at 144. Here, however, even as Grim has repackaged this claim, he has not alleged that his complaints about failure to pay overtime wages were the determining factor for *any* conduct by Centrum Valley Farms allegedly leading to his constructive discharge, only that Centrum Valley Farms continued its existing practice of not paying overtime wages. *See id.*

The part of Centrum Valley Farms's Motion seeking dismissal of Grim's claim of "Constructive Discharge—Failure To Pay Overtime Wages" in Count IV is granted.

### III. CONCLUSION

Upon the foregoing, Centrum Valley Farms's November 25, 2015, Pre-Answer Motion For Partial Dismissal (docket no. 7) is **granted in part and denied in part**, as follows:

1.      The part of Centrum Valley Farms's Motion seeking dismissal of Grim's claim of "Constructive Discharge—Workers' Compensation Retaliation" in Count III is **denied**; but

2.      The part of Centrum Valley Farms's Motion seeking dismissal of Grim's claim of "Constructive Discharge—Failure To Pay Overtime Wages" in Count IV is **granted**.

**IT IS SO ORDERED**.

**DATED** this 18th day of March, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA